## HUNNICUTT *v.* CHAMBERS.

1. Where a tenant against whom a distress warrant has been sued out meets the same by a counter-affidavit in which he, as the statute provides, flatly denies the whole of the alleged indebtedness, or some definite portion thereof, he may by competent evidence prove any fact, connected with the rent contract, which shows that the rent distrained for, or the portion thereof denied, is not a just demand against him.   But where in such counter-affidavit no distinct and general denial of the plaintiff's demand is set forth, but the defendant merely alleges that a designated portion of the rent claimed is not due, for certain specified reasons, he will, in making out his defense, be confined to introducing testimony establishing the truth of those reasons only.
2. Even if rejected evidence offered by a defendant was admissible, its exclusion is harmless error, if such evidence would in no way have strengthened the defense set up.
3. Taking the evidence for the defendant actually introduced and the excluded evidence as to the plaintiff's alleged promise in reference to the repair of the levee, the whole of it together presented no reason in law for defeating the plaintiff, either in whole or in part; and therefore the court did not err in directing a verdict for the plaintiff.

Argued March 8, — Decided August 7, 1900.

Distress warrant.   Before Judge Nottingham.   City court of Macon.   July 29, 1899.

*Hardeman & Moore*, for plaintiff in error.
*Steed & Ryals*, contra.

Fish, J.   One ground of the motion for a new trial is, that

the court erred in excluding certain evidence offered by the defendant for the purpose of showing that, when he rented the place and gave the rent note, Chambers, the plaintiff's agent, agreed to furnish him with lumber with which to build two or three houses on the rented premises, so that the defendant could put subtenants in them, and that by reason of the failure of the plaintiff to comply with this agreement the defendant sustained damages amounting to several hundred dollars.    The court excluded this evidence, upon the ground that as the rent note did not contain any agreement on the part of the landlord to furnish lumber, the evidence offered tended to vary the terms of the written contract.    We deem it unnecessary to determine whether the ground upon which the judge based his ruling was sound or unsound; for we are clearly of opinion that the evidence was inadmissible for another reason.    The counter-affidavit filed by the defendant did not authorize the introduction of this evidence.    Where a tenant against whom a distress warrant has been sued out meets the same by a counter-affidavit in which he, as the statute provides, flatly denies the whole of the alleged indebtedness, or some definite portion thereof, he may by competent evidence prove any fact, connected with the rent contract, which shows that the rent distrained for, or the portion thereof denied, is not a just demand against him.    *Johnston* v. *Patterson*, 86 *Ga.* 725, and cases there cited.    The counter-affidavit in this case did not contain any general denial of the indebtedness for rent which the plaintiff claimed against the defendant, nor did it contain a general denial of any definite portion of this alleged indebtedness.    The amount distrained for was $818.72.    In his counter-affidavit the defendant alleged that he did not owe the amount distrained for, "for the reason that the said plaintiff [was] indebted to him in the sum of $542.50, by reason of her failure to keep and fulfill her cross-obligations under said rent contract and under the statute in such cases made and provided," in that she failed to repair a certain levee upon the rented premises, the purpose of which was to protect the swamp-land from overflow by the waters of a creek; in consequence of which failure to repair, this land was flooded and the crops of the defendant and his tenants were destroyed.    Then followed an itemized statement of the par-

ticular crops which were damaged and the amount of damage to each, the whole footing up exactly $542.50. We think that the effect of this counter-affidavit was to admit that the defendant owed the amount distrained for, less the damage which he had sustained by reason of the plaintiff's failure to properly keep up the levee. The defendant impliedly admitted that the only reason why he did not owe the full amount distrained for was because of the damages which he had sustained in consequence of the overflow of the bottom land. He denied the plaintiff's claim only to the amount of $542.50, and qualified this denial by alleging that the reason he did not owe this much of the sum claimed by the plaintiff was because of these particular damages. Standing upon a counter-affidavit which denied only a definite portion of the amount claimed by the plaintiff, and denied that portion of it solely for the reason stated, the defendant, in addition to introducing evidence to support this contention, sought to attack the *undenied* portion of the plaintiff's claim, by introducing evidence to show that he was damaged in a further amount by the failure of the plaintiff to furnish him with lumber with which to build certain houses on the rented place. Clearly, under the pleadings, he could not legally do this. To have allowed him to introduce evidence to support his claim to recoup the sum of $542.50 for damages occasioned by the overflow of the crops, and also to introduce testimony to show that he was damaged in an additional sum by the failure of the landlord to furnish him with lumber with which to build the houses, would have been equivalent to allowing him to contest, in whole or in part, that portion of the plaintiff's claim which he had not denied by his counter-affidavit. The effect of his counter-affidavit was this: "I admit that, when the plaintiff's claim for rent is reduced by the amount of the damages which I have sustained by reason of her failure to repair the levee, I owe her the balance." But when he came to introduce evidence he undertook to show that, even if the claim of the plaintiff were thus reduced, there should be a further reduction on account of the damages occasioned by the failure of the plaintiff to furnish him with lumber with which to build upon the rented place two or three houses for subtenants. We think, in introducing evidence, he was rightly confined to the specific defense which he set up.

2. Another ground of the motion was, that the court erred in excluding the following evidence offered by the defendant: "At the time the rent note was written and signed, Mr. Chambers's attention was called to the levee and the strength of it. We talked about it before and also on that day; and he asked me if I would keep up the levee, and I, said I would not keep it up for the rent of the plantation. I says, 'I want you to keep it up, for if you tear it down it would ruin the whole farm in the swamp; it has done it before, and without that they are not worth anything,' and I do not remember the answer. Chambers said he would attend to the levee as he had done before." This evidence was excluded on the ground that the rent note did not contain an agreement to repair the levee. The effort of the defendant was to prove that, at the time the rent contract was entered into, the plaintiff, through her agent, Mr. Chambers, promised to repair the levee, but it will be seen that the only promise that the defendant offered to testify that Chambers made was, that "he would attend to the levee as he had done before." The exclusion of the testimony to establish this promise on the part of Chambers did the defendant no harm whatever, because there is nothing in the evidence in the case which shows that Chambers did not, after the rent contract was entered into, attend to the levee as he had done before. The defendant was permitted by the court to freely testify as to the condition of the levee before, at the time, and after the execution of the rent contract. All the evidence that he offered in reference to the levee seems to have been admitted, except his statement as to Chambers's promise. We have carefully examined the evidence, and we do not find anything in it which shows that after the execution of the rent contract, and up to the time that the levee was broken and the defendant's crops injured, Chambers knew that the levee was not in as good condition as it was when the defendant rented the the place; in fact, the evidence does not show that up to that time the condition of the levee had materially changed. The defendant himself testified: "At the time I rented, the levee was in the same condition as year before. Of course, it had been torn down, but we fixed it up the year before, and we did not go all over it and examine it. I contracted the year before

to fix one place, and fixed it.   When I made rent contract, the levee was in about the same fix it was year before after we repaired it, so far as we knew.   Of course, we did not go over any part of it to see."   In endeavoring to ascertain whether the defendant was hurt by the refusal of the court to allow him to testify that Chambers promised to attend to the levee as he had done before, two questions naturally arise: first, how did Chambers attend to the levee before? second, did he comply with this promise, by attending to the levee as he had done before?  Upon the first of these questions the evidence was very meager.   The defendant testified that the year before, when the levee had been torn down, it was fixed up.   The only other witness introduced by the defendant testified that he did not know that the levee, before the freshet which occasioned the damage to the defendant's crops, "was any worse than it was two or three years back," and that he did not think there had been any work done on it at all.   The only witness introduced by the plaintiff testified that, at the time of the freshet, the levee "was in same condition it had been for several years, and it stood the freshets of previous years," while he lived on the place, and that "no repairs were made on the levee while [he] lived there, about eleven years, except when a big freshet tore it down in some unexpected spot, like it did this year."   All that can be said, from this testimony, in reply to the first question is, that the way in which the levee had been attended to before was to repair it after it had been torn down.   There is nothing to show that, after the defendant rented the place, the levee was torn down until it was broken by the freshet which caused the damage to defendant's crops.   So it can not be said that the evidence shows that Chambers did not comply with his promise, if made, to attend to the levee as he had done before.

Besides, we think that the testimony clearly shows that the damage of which the defendant complained was caused by an extraordinary freshet.   The defendant's witness, Hicks, testified:  " An extraordinary freshet in creek broke down the levee. It was a little bigger than any we had since I have been on the place."   Nisbet, the only witness for the plaintiff, testified that the break in the levee was caused by "an unusual freshet, the largest in several years."   The testimony of the defendant him-

self does not conflict with this. He testified that "The break was caused by high water," and that "it was a freshet." So, granting that Chambers, the plaintiff's agent, made the promise which the defendant sought to prove, we think the evidence shows that the break in the levee and the consequent damage to the defendant's crops were not caused by a failure upon Chambers's part to keep this promise, if he had given it, but by an extraordinary freshet; and, for this reason, the defendant could not have been hurt by the ruling of the court.

3. Taking the evidence for the defendant actually introduced and the excluded testimony relating to Chambers's agreement to keep up the levee, the whole of it together presented no reason in law for defeating either in whole or in part, a recovery by the plaintiff of the amount in issue between the parties; and therefore the court did not err in directing a verdict for the plaintiff. *Judgment affirmed. All the Justices concurring.*